**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4575**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JAMES DANIEL ARBAUGH,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. Elizabeth Kay Dillon, District Judge. (5:17-cr-00025-EKD-1)

Argued: December 10, 2019                       Decided: February 20, 2020

Before KING, AGEE and RICHARDSON, Circuit Judges.

Affirmed in part and vacated and remanded in part by published opinion. Judge Agee wrote the opinion, in which Judge King and Judge Richardson joined.

**ARGUED:** Erin Margaret Trodden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Harrisonburg, Virginia, for Appellant. Laura Day Rottenborn, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee. **ON BRIEF:** Frederick T. Heblich, Jr., Interim Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant. Thomas T. Cullen, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

AGEE, Circuit Judge:

James Daniel Arbaugh appeals the procedural and substantive reasonableness of his sentence for engaging in illicit sexual conduct with a minor in a foreign country, in violation of 18 U.S.C. § 2423(c) and (e). On review, we conclude the district court did not err in applying a 2-offense-level enhancement to the Guidelines calculation based on undue influence resulting from the age disparity between Arbaugh and his victim under U.S.S.G. § 2G1.3(b)(2). We further conclude that the court adequately explained the basis for Arbaugh's terms of imprisonment and supervised release and that its decision to impose a 276-month term of imprisonment was substantively reasonable. But we hold that the district court procedurally erred by failing to explain the reasons for imposing four computer-related special conditions of release. Accordingly, we affirm the judgment and sentence of the district court except for the four challenged conditions of supervised release, which we vacate and remand for partial resentencing.

I.

Arbaugh, a resident of Virginia, spent extended time in Haiti ostensibly for missionary work on behalf of his church. Over a period of several years, he also sexually abused approximately two dozen Haitian minor children. After a woman from Arbaugh's church witnessed him engaged in something "very disturbing" while they were together in Haiti, the woman's husband confronted Arbaugh via email. J.A. 24. In response, Arbaugh returned to the United States and began meeting with a counselor with the support of his church. At first Arbaugh disclosed only that he had engaged in homosexual conduct, but

2

eventually he admitted to the counselor that he had sexually abused minor children and the counselor then reported him to law enforcement.[1]

Over the course of three separate interviews with law enforcement, Arbaugh described what he had done and provided them with names, locations, and dates. Although he had a return trip to Haiti scheduled, Arbaugh voluntarily surrendered his passport. He also consented to a search of his computer, which disclosed no child pornography, though the photographs of his time in Haiti included photos of his victims.

In December 2017, Arbaugh was indicted in the U.S. District Court for the Western District of Virginia on one count of knowingly traveling in foreign commerce to engage in illicit sexual conduct with "Minor Victim #1," in violation of 18 U.S.C. § 2423(c) and (e). Minor Victim #1 is the son of a pastor in Haiti that Arbaugh had known for years. When his victim was five or six years old, Arbaugh touched the minor's genitals with his hands "and maybe his mouth." J.A. 249.

Arbaugh pleaded guilty without the benefit of a written plea agreement and the district court ordered the preparation of a pre-sentence report ("PSR").

At sentencing, Arbaugh objected to the PSR's inclusion of a two-offense-level enhancement for undue influence of a minor under U.S.S.G. § 2G1.3(b)(2)(B), arguing that

---

[1] The record indicates that Arbaugh was not initially forthcoming with either his church or his counselor regarding the nature or scope of his behavior. He eventually admitted to a church leader that he had molested a minor child in Haiti, which led the church leadership to contact an attorney to determine whether anyone at the church was required to report Arbaugh's conduct to law enforcement. At the same time, Arbaugh's counselor confronted him about whether he had committed sexual acts with minors and Arbaugh admitted that he had.

his victim's age was already accounted for by other aspects of his Guidelines calculation and that imposing this enhancement based solely on an age disparity resulted in impermissible double counting. The district court overruled that objection, noting that double-counting is allowed under the Guidelines unless expressly prohibited and "the enhancement looks not just at the age of the minor victim, but at the relative ages of the victim and the defendant." J.A. 253. After ruling on other aspects of the Guidelines calculation not at issue on appeal, the district court determined Arbaugh's offense level to be 38, which, when coupled with his criminal history category of I, resulted in a Guidelines range of 235 to 295 months' imprisonment.

The district court then heard the parties' arguments about an appropriate term of imprisonment under 18 U.S.C. § 3553(a). The Government argued that Arbaugh's offense conduct, total number of victims over so many years under the guise of missionary work, and equivocating statements about whether he recognized the true nature of his crimes all warranted an upward variant sentence of 360 months' imprisonment (the statutory maximum). Arbaugh argued that the only reason the Government knew of his crimes was because he had come forward and admitted them, meaning that he should be credited for his disclosure of a crime. In addition, he argued that despite his crimes, he had done a tremendous amount of positive work in Haiti, which should be considered alongside his criminal acts. These circumstances, in his view, warranted a downward variant sentence.

The district court sentenced Arbaugh to a term of 276 months' imprisonment, slightly higher than the mid-range of the Guidelines calculation, and it imposed the Guidelines-recommended term of lifetime supervised release. In explaining the sentence,

4

the district court pointed to, on the one hand, the heinousness of Arbaugh's crime, his targeting "the most vulnerable children," and his failure to be fully forthcoming regarding the full scope of his conduct. J.A. 239. On the other hand, the court determined that Arbaugh's offense was not the "worst of the worst," pointing to the lack of threats or violence and observing that Arbaugh had cooperated with law enforcement. J.A. 241. The district court also imposed various special conditions of release, including certain conditions requiring Arbaugh to submit to warrantless searches of his computer and related devices and prohibiting him from owning encryption materials.

Arbaugh noted a timely appeal, and the Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

II.

Arbaugh raises five challenges to his sentence on appeal, asserting: (1) the district court committed procedural error by including a two-level enhancement based on age disparity under § 2G1.3(b)(2); (2) it failed to adequately address the need to avoid unwarranted sentence disparities when explaining its sentence under § 3553(a); (3) it imposed a substantively unreasonable term of 276 months' imprisonment; (4) it failed to adequately explain its reasons for imposing a lifetime term of supervised release; and (5) it failed to adequately explain why it imposed four restrictions related to computer usage as special conditions of supervised release. We reject all but the last argument.

The Court "reviews a sentence for reasonableness," *United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011), "under a deferential abuse-of-discretion standard," *Gall*

5

*v. United States*, 552 U.S. 38, 40 (2007). In undertaking this review, the Court first considers whether the district court committed a "significant procedural error, such as . . . improperly calculating[] the Guidelines range, . . . failing to consider the § 3553(a) factors, . . . or failing to adequately explain the chosen sentence." *Id.* at 51. If the Court "find[s] no significant procedural error, [it] then consider[s] the substantive reasonableness of the sentence imposed." *Diosdado-Star*, 630 F.3d at 363 (internal quotation marks omitted). This standard applies when considering a defendant's term of imprisonment, his term of supervised release, and any condition of that release. *United States v. Armel*, 585 F.3d 182, 186 (4th Cir. 2009).

A.

Arbaugh first asserts the district court erred in imposing a two-level enhancement under § 2G1.3(b)(2)(B), which applies if a participant "unduly influenced a minor to engage in prohibited sexual conduct." § 2G1.3(b)(2)(B). The commentary notes to that provision state, in relevant part, that "there shall be a rebuttable presumption that subsection (b)(2)(B) applies" "[i]n a case in which a participant is at least 10 years older than the minor." *Id.* cmt. n.3. And the notes explain that under these circumstances, "some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor." *Id.*

Arbaugh contends that his victim's age was already accounted for in calculating his Guidelines range because the calculation started with § 2G1.3's base offense level, which applies only to sex offenses involving minors, and included § 2G1.3(b)(5)'s enhancement for conduct involving a minor under the age of twelve. Thus, Arbaugh asserts that applying

6

a § 2G1.3(b)(2)(B) additional enhancement based on age disparity would constitute double-counting of the victim's age. While Arbaugh acknowledges that double-counting is generally permitted under the Guidelines, he contends it is not permitted in this circumstance because it results from *commentary* that "expanded the scope of the guideline" to encompass an age-related factor. Opening Br. 9. He also contends that the Guideline commentary's rebuttable presumption contradicts U.S.S.G. § 6A1.3's evidentiary standard by allowing the court to impose an undue-influence enhancement based on no evidence that an undue influence existed. Lastly, he contends the rebuttable presumption improperly shifts the burden of proving the sentencing enhancement to the defendant despite the Court's instruction that the Government bears the burden of proving Guidelines-based sentencing enhancements.

When a defendant challenges the district court's inclusion of a sentencing enhancement to the Guideline calculation, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Cox*, 744 F.3d 305, 308 (4th Cir. 2014). At sentencing, the Government had to show by a preponderance of the evidence that the Guidelines enhancement applied. *United States v. Blauvelt*, 638 F.3d 281, 293 (4th Cir. 2011).

We conclude that in calculating Arbaugh's Guidelines range, the district court did not err by including the § 2G1.3(b)(2)(B) enhancement because the Guidelines did not "double count" the victim's age and any overlap in age considerations was permitted. So-called "double counting" occurs "when a provision of the Guidelines is applied to increase punishment on the basis of a consideration that has been accounted for by application of

7

another Guideline provision or by application of a statute." *United States v. Reevey*, 364 F.3d 151, 158 (4th Cir. 2004). By its plain terms, § 2G1.3(b)(2)(B) focuses on a different aggravating factor (undue influence) than § 2G1.3 (minor victims) or § 2G1.3(b)(5)'s enhancement (minor victim under the age of twelve). As such, subsection (b)(2)(B) does not "consider" the same factor as these other Guideline provisions. To be sure, the commentary to subsection (b)(2)(B) does bring age into the analysis, but it does so for a different reason and in a different way than the other Guideline provisions. Rather than focusing only on the victim's age—as the other provisions do—the commentary relies on the age disparity between the victim and the perpetrator of the offense. And it does so because it is reasonable to presume that, in the absence of evidence to the contrary, "some degree of undue influence" exists whenever an age disparity of at least ten years exists between a minor and another participant in the prohibited sexual conduct. § 2G1.3(b)(2)(B) cmt. n.3. In sum, neither the text of § 2G1.3(b)(2)(B) nor the commentary's rebuttable presumption consider the same factor already accounted for by another Guideline provision, so double counting did not occur.

But even if some overlap exists, the Guidelines generally permit double counting except where they "expressly prohibit it." *Reevey*, 364 F.3d at 158. Nothing in the Guidelines expressly prohibits enhancing a defendant's offense level based on both § 2G1.3(b)(2)(B)'s rebuttable presumption and other provisions of § 2G1.3. Moreover, the relevant commentary does not expand the scope of § 2G1.3(b)(2)(B). Instead, it explains a circumstance in which the text of the provision operates (subject to evidence to the contrary).

8

Arbaugh's argument that § 6A1.3 expressly prohibits § 2G1.3(b)(2)(B)'s rebuttable presumption fares no better. Section 6A1.3 states that when a fact is disputed at sentencing, parties should be given the opportunity to present information and the court can resolve disputes by considering any "relevant information" without having to follow the Federal Rules of Evidence, "provided that the information has sufficient indicia of reliability to support its probable accuracy." § 6A1.3. Nothing in § 6A1.3 prohibits the fact of age disparity from constituting relevant and reliable evidence that undue influence exists. And, in an appropriate case, where the defendant proffered evidence to rebut the presumption, § 6A1.3 would govern the district court's determination of whether the disputed fact of undue influence exists. But § 6A1.3 does not contradict the rebuttable presumption in § 2G1.3(b)(2)(B)'s commentary nor does it expressly prohibit the court from applying (b)(2)(B)'s enhancement alongside other § 2G1.3 subsections.

The rebuttable presumption in § 2G1.3's commentary notes does not improperly shift the burden of proof away from the Government, which always bore the burden of proving, by a preponderance of the evidence, any facts supporting the district court's finding that "undue influence" over a minor occurred as part of Arbaugh's offense. *See United States v. Jones*, 31 F.3d 1304, 1316 (4th Cir. 1994). That burden never shifted.

The Government sought to satisfy its burden at sentencing by offering the undisputed fact that when Arbaugh was 30 years old, he engaged in sexual activity with a victim who was five or six years old. That evidence of a more-than-two-decade age disparity would support the district court's finding of undue influence even apart from the commentary's rebuttable presumption. Regardless, the commentary similarly recognizes

9

the reasonable conclusion that, absent evidence to the contrary, evidence of at least a ten-year age disparity serves as evidence that "some degree of undue influence" existed. § 2G1.3(b)(2)(B) cmt. n.3. Allowing defendants the opportunity to rebut that presumption—something Arbaugh did not attempt to do in this case—did not relieve the Government of its ultimate burden.[2]

## B.

Arbaugh next contends the district court failed to adequately address how its 276-month term of imprisonment satisfies § 3553(a)'s goal of "avoid[ing] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Specifically, he contends the district court failed to adequately respond to Arbaugh's non-frivolous contention that he should be sentenced to a lower term of imprisonment because his conduct was not as severe as the conduct at issue in *United States v. Bollinger*, 798 F.3d 201 (4th Cir. 2015), as well as several other out-of-circuit cases involving the same offense.

When a defendant offers non-frivolous reasons for imposing a sentence outside the Guidelines range, "a district judge should address the party's arguments and explain why he has rejected those arguments." *United States v. Carter*, 564 F.3d 325, 328 (4th Cir.

---

[2] In a footnote, Arbaugh contends that shifting the burden to him violated his due process and jury trial rights under the Fifth and Sixth Amendments, respectively. We do not ordinarily entertain arguments made solely in a footnote because they lack the development required by Federal Rule of Appellate Procedure 28, and we decline to do so here. *See Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 607 (4th Cir. 2009) (holding that the appellant waived an argument raised only in a footnote in the opening brief).

2009) (internal quotation marks omitted). But this admonition focuses on the whole of a defendant's argument and does not require the court to address every argument a defendant makes, as we have held that district courts need not "robotically tick through § 3553(a)'s every subsection." *United States v. Powell*, 650 F.3d 388, 395 (4th Cir. 2011) (internal quotation marks omitted). Instead, "[t]he adequacy of the sentencing court's explanation depends on the complexity of each case . . . [and] [t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon the circumstances." *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017) (internal quotation marks omitted). At bottom, we look to whether the sentencing court has said "enough to satisfy" us that the court "has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decision-making authority." *Id.* (internal quotation marks omitted). And in a routine case, where the district court imposes a within-Guidelines sentence, "the explanation need not be elaborate or lengthy." *United States v. Hernandez*, 603 F.3d 267, 271 (4th Cir. 2010).

On review, we can confidently state that the district court considered Arbaugh's argument in favor of a below-Guidelines sentence and imposed an individualized sentence tailored to Arbaugh's offense. For one thing, we rejected a nearly identical argument to the one Arbaugh advances for reasons that are also applicable in this case in *United States v. Allmendinger*, 706 F.3d 330 (4th Cir. 2013). That defendant argued his sentence was procedurally unreasonable because the district court "failed to address Allmendinger's argument that his sentence created an unwarranted disparity with those of similarly situated defendants." *Id.* at 343. We rejected this argument based on the general proposition that

although the district court must explain its reasons for choosing a particular sentence in sufficient detail to assure the appellate court that it provided an individualized assessment of the case before it, it is not required to "discuss each § 3553(a) factor extensively, but need only provide a rationale tailored to the particular case at hand and adequate to permit meaningful appellate review." *Id.* (internal quotation marks omitted). We observed that before sentencing Allmendinger the district court "heard extensive argument" from both parties and provided a substantive "explanation for the sentence imposed," which "left no doubt regarding the court's reasons for selecting the particular sentence that it did." *Id.* Therefore, we held that no procedural error occurred even though the court had not specifically addressed § 3553(a)(6)'s need to avoid unwarranted sentencing disparities. *Id.*

Several factors particular to Arbaugh's sentencing hearing cause us to reach the same conclusion here. As in *Allmendinger*, the district court heard extensive argument on the § 3553(a) factors and provided a substantial explanation for its sentencing decision that allows us to review the reasonableness of its decision. That satisfied the district court's duty to provide an individualized assessment of the § 3553(a) factors that permits our review. What's more, although the court did not expound on the need to avoid unwarranted sentencing disparities, it did not need to do so given the arguments Arbaugh had made to the court regarding other cases. Specifically, Arbaugh cited *Bollinger* and the other cases to argue that he should not be sentenced to the 300-month statutory maximum (as the Government was urging). Arbaugh did not make any specific or detailed argument about how these cases supported his view that he should receive a below-Guidelines sentence. Based on the actual arguments Arbaugh had made to it, the court had nothing to explain to

12

him—he asked the court to consider the need to avoid unwarranted sentencing disparities that would arise had it imposed a 300-month sentence and the court did not impose a 300-month sentence. Further, we note that *Bollinger* does not support Arbaugh's new argument that the district court needed to explain how its sentence avoided unwarranted sentencing disparities because that defendant received a sentence two years *higher* than Arbaugh's sentence. There is simply no substance to Arbaugh's contention that the district court needed to "address unwarranted sentencing disparities" by explaining why a defendant with purportedly more egregious conduct under the same statute of conviction was sentenced to a longer term of imprisonment than he was. Lastly, we note that although the district court did not separately discuss § 3553(a)(6) in announcing its sentence, it mentioned that factor was part of its sentencing decision and it clearly knew *Bollinger* well and engaged Arbaugh's counsel in detailed dialogue about how that case operated as a comparator earlier in the sentencing hearing.

In sum, the district court did not commit reversible procedural error by failing to address specifically how its sentence accomplished the objective of avoiding unwarranted sentencing disparities.

## C.

Arbaugh next argues his 276-month term of imprisonment is substantively unreasonable because it is longer than the amount of time necessary to serve the purposes of § 3553(a)(2), including affording adequate deterrence and protecting the public from further crimes. In particular, he asserts that a sentence of this length will discourage individuals from coming forward and honestly disclosing their criminal conduct. He

13

contends that the district court failed to credit him "for disclosing to law enforcement a crime that would not otherwise have been discovered," let alone prosecuted. Opening Br. 17. And Arbaugh suggests that his lengthy, mid-Guidelines sentence will not "deter[] others from engaging in sexual misconduct abroad," but instead will encourage concealment and dishonesty. Opening Br. 19.

When considering the substantive reasonableness of a prison term, we "examine[] the totality of the circumstances to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010). And in *Rita v. United States*, 551 U.S. 338 (2007), the Supreme Court "held that an appellate court is allowed to presume that a district court's chosen sentence is substantively reasonable if it is within a correctly calculated Guidelines range." *Mendoza-Mendoza*, 597 F.3d at 216 (citing to *Rita*, 551 U.S. at 351).

Here, it was reasonable for the district court to impose the term of 276 months' imprisonment. The district court discussed the heinous nature of Arbaugh's offense conduct, which involved sexually assaulting a boy only five or six years old. In addition, the court noted that the conviction was just one incident of many because Arbaugh had sexually assaulted a number of minor boys over the course of many years in ways that "involved some scheming and planning" and grooming of his victims, who were "the most vulnerable children" given his role in their families and communities. J.A. 239. It concerned the court that Arbaugh had previously expressed his belief that "the boys appreciated [his acts] and he wanted to show them love," and that he had attempted to

14

justify his conduct by suggesting that "some of his criminal conduct was acceptable in Haitian culture." J.A. 240. Further, the court considered mitigating factors in deciding what sentence to impose, specifically expressing its belief that Arbaugh did not deserve the statutory maximum because he had cooperated with law enforcement, indicated that he wanted his victims to get help, and "significantly helped some people in Haiti," and no evidence existed to suggest that he had threatened any of his victims. J.A. 241. These comments—and the court's explanation as a whole—confirm the appropriateness of its sentence under the § 3553(a) rubric and an appropriate exercise of discretion in weighing the factors involved. *See Jeffery*, 631 F.3d at 679.

Lastly, we address a fundamental misunderstanding contained within Arbaugh's argument that other criminals will be deterred from cooperating with law enforcement because he received such a lengthy sentence. In so arguing, Arbaugh misapprehends § 3553(a)(2)(B), which requires courts to consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct" as part of the sentencing decision. Arbaugh argues on appeal that individuals who have *already engaged in* criminal conduct will be deterred from coming forward if they fear facing lengthy terms of imprisonment, so the district court should have imposed a lower sentence. That's plainly not what the factor entails, which is to deter individuals from engaging in criminal conduct in the first instance.

D.

Next, Arbaugh asks us to vacate and remand his sentence of lifetime supervised release, asserting the district court failed to adequately explain the basis for a lifetime—as opposed to a shorter—term. Because Arbaugh's offense involved a sex crime with a minor

15

victim, he was subject to a statutory mandatory minimum of five years' supervised release and a maximum term of life. 18 U.S.C. § 3583(k). The Sentencing Guidelines set the same range, with the associated policy statement recommending that sex offenders receive the statutory maximum term of lifetime supervised release. U.S.S.G. § 5D1.2(b)(2) (Policy Statement). In deciding the length of a term of supervised release, district courts must consider many of the same § 3553(a) factors they consider in deciding a term of imprisonment. *See* 18 U.S.C. § 3583(c) (requiring courts to consider the factors contained in § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)).

By arguing that his request for a five-year term of supervised release required the district court to separately and directly address why it was imposing lifetime supervised release, Arbaugh ignores the context of what he argued in the district court and how the district court carried out its sentencing duties. Supervised release was mentioned a handful of times by the parties and the district court and it was not the focal point of any extended discussion. For example, in his briefing to the district court, Arbaugh argued that *no* term of imprisonment was necessary and that a longer term of supervised release could accomplish the same objectives. During the hearing, as part of his overall sentence request, Arbaugh asked the district court to impose "a period of supervised release of five years," J.A. 225, but he did not make any separate § 3553(a) arguments related to supervised release or why a five-year term was appropriate.

The district court did the same thing, announcing at the outset what Arbaugh's terms of imprisonment and supervised release would be and then addressing holistically how the § 3553(a) factors applied to his case. The court rejected Arbaugh's contention that

16

supervised release alone would be an adequate sentence because it found that a substantial term of imprisonment was appropriate. Lastly, at the conclusion of its announcement of Arbaugh's sentence, the district court asked the parties if either had "any objection to the procedure by which the Court determined the sentence" and both parties indicated they had no objections. J.A. 241.

Reading the record and the district court's explanation for its sentence as a whole, we readily conclude the district court did not commit procedural error in failing to more specifically explain the basis for a lifetime supervised release sentence. As discussed in the context of a term of imprisonment, "[w]hen rendering a sentence, the district court must make an individualized assessment based on the facts presented," applying "the relevant § 3553(a) factors to the specific circumstances of the case before it," and "stat[ing] in open court the particular reasons supporting its chosen sentence" such that this Court can meaningfully review the sentence. *Carter*, 564 F.3d at 328 (internal quotation marks and emphasis omitted). The district court did that here, announcing that it was imposing a term of lifetime supervised release and then discussing how it—together with the term of imprisonment it simultaneously announced—satisfied the § 3553(a) factors. No more was required, particularly where the term was consistent with the Guidelines recommendation and Arbaugh indicated he had no objections to the procedure the court used to sentence him when specifically given the opportunity to ask for clarification or elaboration. *See also United States v. Helton*, 782 F.3d 148, 154 (4th Cir. 2015); *see also United States v. Aplicano-Oyuela*, 792 F.3d 416, 424 (4th Cir. 2015).

17

E.

Arbaugh's final argument is that the district court committed reversible procedural error by failing to adequately explain why it imposed four special conditions of supervised release related to computers despite Arbaugh's offense not involving a computer and despite the possibility that they might limit his future job prospects.[3] At the sentencing hearing, the district court ordered Arbaugh to comply with these special conditions, but it did not explain why it was imposing them.

Just as with other parts of a sentence, the district court must adequately explain any special conditions of supervised release. *See Armel*, 585 F.3d at 186. When the district court has offered no explanation for the imposition of a special condition, "we have no basis for determining whether they are reasonably related to the factors referred to in 18 U.S.C. § 3583(d)(1) and 'involve no greater deprivation of liberty than is reasonably necessary.' 18 U.S.C. § 3583(d)(2)." *Id.* (alteration in original). And in a decision issued

---

[3] The four special conditions are:
[1] The defendant shall allow the probation officer or designee to conduct random inspections, including retrieval and copying of data from any computers, telephones, and personal computing devices that the defendant possesses or has access to, including any internal or external peripherals.
[2] The defendant shall allow the temporary removal of any computers, telephones, and personal computing devices for a more thorough inspection.
[3] The defendant shall not possess or use any data encryption technique or program.
[4] The defendant shall purchase and use hardware and software systems that monitor the defendant's computer usage, if so directed by the probation officer.
J.A. 959.

after Arbaugh's sentence, we held that a district court's failure to explain the reasons for any special conditions to which the defendant would be subject upon release for life was not harmless. *United States v. Ross*, 912 F.3d 740, 746 (4th Cir. 2019). We are constrained by this precedent to conclude that Arbaugh had "a right to know why he faces special conditions that will forever modify the course of his life, and the district court's silence violated his rights." *Id.*

The Government's arguments do not directly grapple with the district court's silence and our case law on this point. Instead, it asks the Court to affirm based on other areas of the law and facts in the record that would support imposing the challenged special conditions. But we are not permitted to substitute our assessment of the record for the district court's obligation to explain its rationale in the first instance. *Id.* The substantive reasonableness of the conditions is a separate inquiry from the procedural reasonableness of the hearing. *Id.* Further, the district court cannot fulfill its duty by generally referring to the legal standards in § 3553(a) and § 3583(d), which govern how the court should exercise its discretion in imposing any special conditions of release. Instead, the district court had to explain what facts led to its decision to impose the computer-related special conditions on this defendant. *Id.* at 745–46.[4]

Lastly, we reject the Government's assertion that the special conditions are justified by the fact that Arbaugh is required to register as a sex offender under the Sex Offender Registration and Notification Act, which will separately subject him to similar conditions.

---

[4] We express no view, one way or the other, as to the propriety of these special conditions.

Although individuals who must register under that Act may be required to submit to warrantless searches as part of their release, 18 U.S.C. § 3563(b)(23), the district court still has discretion whether to require that condition and this discretion is governed by the standards set out in § 3553(a)(1) and (a)(2). *See* § 3563(b) (stating "[t]he court may provide, as further conditions of a sentence . . . to the extent that such conditions are reasonably related to the factors set forth in section 3553(a)(1) and (a)(2) and to the extent that such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553(a)(2) . . . ."). Moreover, any separate requirements flowing from the registration may change in the intervening years.

For these reasons, we are constrained to find that the district court committed reversible procedural error by failing to explain why it imposed the four computer-related special conditions. As such, "we cannot determine the reasonableness of the challenged special conditions." *Armel*, 585 F.3d at 186. We therefore vacate Arbaugh's sentence only as to the challenged special conditions of release. We remand for resentencing so that the district court can decide whether to impose those conditions and, if so, to provide an individualized assessment of its reasons for doing so in Arbaugh's case.[5]

---

[5] Although Arbaugh characterizes this issue in terms of a challenge to the procedural reasonableness of the computer-related special conditions, some of his arguments also questioned their substantive reasonableness. Given that we agree with him about procedural error, we need not address the substantive argument.

## III.

For the reasons set out above, we affirm Arbaugh's sentence to 276 months' imprisonment and to lifetime supervised release. We vacate his sentence only with respect to the four challenged special conditions of release, and we remand for resentencing as to those alone.

*AFFIRMED IN PART*
*AND VACATED AND*
*REMANDED IN PART*